# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHEN DOUGLAS McCASKILL, | ) |
| Plaintiff, | ) |
| | ) No. 13 C 3166 |
| DR. MANILLA, et al., | ) Hon. Rebecca R. |
| | ) Pallmeyer |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Douglas McCaskill, a pretrial detainee at the Cook County Jail, has brought more than a dozen lawsuits pursuant to 42 U.S.C. § 1983, challenging the conditions of his confinement at Cook County. In this lawsuit, Plaintiff alleges that Defendants, health care providers at the jail, were deliberately indifferent to his serious medical needs in failing to provide him with appropriate high blood pressure medication. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), and have served Plaintiff with the notice called for by our Local Rule 56.2, explaining the requirements for responding to the motion and the consequences of failure to do so properly. As explained below, the motion is granted. .

## BACKGROUND

This court's Local Rule 56.1 sets forth the procedures for moving for summary judgment and for responding to such a motion. Defendants' motion for summary judgment is properly supported by a statement of facts citing relevant portions of the record. Plaintiff responded to the motion with a memorandum in opposition to the motion [47] and a response to certain of the movants' statement of material facts [48]. The court accepts the assertions in Defendants' statements as true to the extent that the facts are supported in the record. *See* L.R. 56.1(b)(3)(C); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Keeton v. Morningstar, Inc.*, 667 F.3d

877, 880 (7th Cir. 2012). The court is not required to scour the record looking for factual disputes nor expected to manufacture Plaintiff's arguments for him. *See Diadenko v. Folino*, 741 F.3d 751, 757 (7th Cir. 2013); *see also Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989), but has reviewed records submitted by both parties. Plaintiff's failure to comply with Local Rule 56.1, does not result in an automatic grant of summary judgment in favor of Defendants. Instead, the court still must evaluate all facts in the light most favorable to him, the non-moving party. *See* FED. R. CIV, P. 56(e)(2); *Keeton*, 667 F.3d at 884. .

**FACTS**

Plaintiff Stephen Douglas McCaskill (hereinafter, "Plaintiff" or "McCaskill") was a pretrial detainee at Cook County Jail during the relevant time period. (Defs.' 56.1 Stmt. [42] ¶ 1.) Nurse Genevieve Sombero performed an intake screening on November 20, 2012, and referred Plaintiff for a medical assessment. (*Id.* at ¶¶ 2, 3.) Intake records list Plaintiff as taking certain medications: ASA (aspirin), Clonidine (used to treat high blood pressure), HCTZ (a diuretic), Norvasc (another blood pressure medication), and psychiatric medications. (*Id.* at ¶ 2.) The screening record noted that Plaintiff was allergic to Haldol, an anti-psychotic medication, and Thorazine, another anti-psychotic drug. (*Id.* at ¶ 4.) According to the intake form, Plaintiff was consuming heroin and cocaine daily prior to his incarceration and had a history of high blood pressure. (*Id.*)

Plaintiff's blood pressure was taken on November 20, 2012, and was measured at 141 mmHg/ 88 mmHg. (*Id.* at ¶ 6.) Dr. Salim Dawalibi explained that blood pressure is measured by monitoring the systolic blood pressure, which is the maximum arterial pressure during contraction of the left ventricle of the heart, and the diastolic blood pressure, which is the minimum arterial pressure during the relaxation and dilation of the ventricles of the heart when the heart is at rest. (*Id.* at ¶ 7, citing Affidavit of Dr. Salim

Dawalibi, Exhibit C to Rule 56.1 Stmt.)  Average blood pressure is considered 120/80, and elevated blood pressure is generally 140/90.  (*Id.* at ¶ 8.)

Following initial screening by Nurse Sombero, Plaintiff had an additional medical assessment performed by Physician Assistant Salvador Martinez.  HIs blood pressure tested at 141/88 and 168/88, and PA Martinez ordered that Plaintiff's blood pressure be checked daily from November 20, 2012, through November 23, 2012.  (*Id.* at ¶¶ 9, 10.)  Martinez also directed ordered that Plaintiff receive sulfamethoxazole-trimethoprim (anti-bacterial medication), ibuprofen, hydrochlorothiazide (a diuretic), Amlodipine (a drug used to treat high blood pressure), prochlorperazine (an anti-psychotic medication), Loperamide (an anti-diarrheal drug), hydrozyzine pamoate (a sedative), and Dicyclomine (a medication used to treat irritable bowel syndrome).  (*Id.*)  Martinez referred Plaintiff to a primary care physician.  (*Id.*)

After the initial medical assessment, Plaintiff had an additional mental health screening performed by Donna Albert.  (*Id.* at ¶ 11.)  During this additional mental health screening, Plaintiff disclosed that he was diagnosed with schizophrenia and depression at age 17 and had more than 10 prior psychiatric hospitalizations.  (*Id.* at ¶¶ 11, 12.)  He stated that he had taken Paxil and Risperidone about two months before his incarceration.  (*Id.* at ¶ 14.)  Albert noted Plaintff's diagnoses of hypertension and paranoid schizophrenia.  (*Id.* at ¶ 15.)  Plaintiff was then seen by Dr. Eiizabeth P. Lassen, an osteopath, who reviewed his history and made a list of documents she had reviewed.  (*Id.* at ¶ 16.)

Plaintiff was seen at the Cermak ER on November 21, 2012, and given Loperamide, Diyclomine, Compazine, Hydroxyzine, and Clonidine.[1]  (*Id.* at ¶ 17.)  His lood pressure readings were 135/99 on November 21, 2012; 132/80 on November 22,

---

[1]  A visit to Drugs.com suggests that the first two of these medications are for irritable bowel or diarrhea symptoms; the third and fourth are antipsychotic or antianxiety medications; and Clonidine is a blood pressure medication.

2012; 137/98 on November 23, 2012; 136/98 on November 24, 2012; 130/97 on November 25, 2012; and 143/98 on November 29, 2102.  (*Id.* at ¶¶ 18-23.)  Records show Plaintiff was medicated for his hypertension:  He received Hydrochlorothiazide and Amlopidine from December 3 through December 17; from December 19 through December 31; from January 1 through January 3; and from January 5 through January 31.  (*Id.* at ¶¶ 24, 25, 27, 28.)

On December 13, 2012, Plaintiff filed a Health Services Request Form reporting that he was not receiving baby aspirin, Clonidine, or Norvasc, that his arm, leg and foot hurt; that he needed pain medication; and that his gums were swollen.  (*Id.* at ¶ 26.)  Additional Health Services Request Forms similarly noted that since his entry to the Jail, he had not received the Norvasc, Clonidine, baby aspirin, or potassium chloride as prescribed (January 6, 2013) and that he was not getting Paxil, Norvasc, potassium chloride, baby aspirin, or Clonidine (January 22, 2013).  (*Id.* at ¶ 29, 30.)  The January 22, 2013 request form also noted that Plaintiff had foot fungus and a skin rash on his left leg and arms as a result of an injury that had occurred on April 10, 2009, that he needed glasses, and that he had very dry skin.  (*Id.* at ¶¶ 31, 32.)

Records dated February 11, 2013, show that on that date Dr. Manisha Patel restarted a prescription for Clonidine and increased the dosage of Amlodipline that Plaintiff had been receiving.  (Exhibit to Plaintiff's Response to Motion for Summary Judgment [48], page 10 of 20.)  Plaintiff's blood pressure on February 11, 2013 was measured at 151mmHg / 103mmHg.  (Defs.' 56.1 Stmt. ¶ 33.)  On February 21, 2013, an ultrasound was taken of Plaintiff's internal carotid artery and common carotid artery, and no significant atherosclerotic plague was identified within either artery.  (*Id.* at ¶ 34.)

On March 15, 2013, Dr. Lisa Bustin saw Plaintiff for hypertension preventative care.  (*Id.* at ¶ 35.)  Dr. Bustin noted that Plaintiff's Amlodipine had been increased to 10 mg (from 5mg, which Plaintiff had been receiving upon entry to the jail).  She ordered an

ultrasound of Plaintiff's neck and a cholesterol panel. (*Id.* at ¶ 36.) Dr. Bustin's notes show that the ultrasound and cholesterol panel were within normal limits, and that his blood pressure reading was 110/86. (*Id.* at ¶ 37.) Dr. Bustin ordered Amlodipine, Clonidine, aspirin for cardio-vascular protection, Naproxen coupled with Pantoprazole, and chlorhexidine mouthwash. (*Id.* at ¶ 38.)

Another blood pressure reading, as of April 30, 2013 (110/80) satisfied Dr. Mansour, who saw Plaintiff on that date, that Plaintiff's hypertension was being treated effectively. (*Id.* at ¶¶ 39, 40.) Dr. Mansour ordered Amlodipine, aspirin, Clonidine, Hydrochlorothiazide, ibuprofen, Paroxetine, and Risperidone (medications for hypertension, for pain, and for schizophrenia, according to Drugs.com). (*Id.*)

Dr. Salim Dawalibi, a primary care physician at Cermak Health Services who is not a named defendant in this action, reviewed Plaintiff's Cermak medical chart at Defendants' request. (*Id.* at ¶ 41.) Based on that review of McCaskill's records, as well as his knowledge and experience, Dr. Dawalibi is of the opinion that McCaskill has been properly treated for hypertension. (*Id.* at ¶ 42.) Dr. Dawalibi opined that the medications that Plaintiff received since 2012 are within the guidelines for treating high blood pressure. (*Id.* at ¶ 43.) He observed, further, that with the treatment provided, Plaintiff's blood pressure has remained within manageable levels since November 2012. (*Id.* at ¶ 44.)

Plaintiff filed this lawsuit on June 10, 2013, naming Dr. Manilla,[2] Nurse Price, Nurse Jefferson, and Nurse Nancy.[3] (*Id.* at ¶ 45.) In his response to Defendants' motion for summary judgment, Plaintiff acknowledges that Dr. Mannella did not treat him, and that his claims against her were brought in error. (Plaintiff's Response to

---

[2] "Dr. Manilla" refers to Dr. Concetta Mannella, who is the chair for the Department of Correctional Health at Cermak Health Services.

[3] Defendants identify Nurse Nancy as Nurse Nancy Chumackal.

5

Defs.'s 56.1 Stmt. [48], ¶ 9.) Without identifying the specific role they played in his treatment, he contends the remaining Defendants were deliberately indifferent to his serious medical needs.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

Pretrial detainees have a right to adequate medical treatment under the Fourteenth Amendment. *See Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Claims of deliberate indifference to a serious medical need of a pretrial detainee under the Fourteenth Amendment are governed by the same standards that apply to a claim of deliberate indifference under the Eighth Amendment. *See Williams*, 509 F.3d at 401.

Those standards do not require that prisoners receive "'unqualified access to health care.'" *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006), *quoting Hudson v. McMillian*, 503 U.S. 1, 9 (1992). They are instead entitled only to "adequate medical

6

care." *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002); *see also Forbes v. Edgar*, 112 F.3d at 262, 267 (7th Cir. 1997) (a prisoner is entitled neither to "demand specific care" nor to receive "the best care possible," but is "entitled to reasonable measures to meet a substantial risk of serious harm to her."). A showing of deliberate indifference in the medical context has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the correctional official or health care provider must be subjectively aware of and consciously disregard the medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009).

The subjective element requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006), *citing Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999). In evaluating a deliberate indifference claim, the medical professional's assertions concerning the need for care are not dispositive; "a trier of fact can conclude that the professional knew of the need from evidence that the serious medical need was obvious." *Johnson*, 433 F.3d at 1013, *quoting Collignon v. Milwaukee Cty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996) (where the need for care is obvious—for example, a broken leg or inability to breathe—failure to provide care is actionable). But a medical professional's erroneous treatment decision constitutes deliberate indifference only "if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *See Collignon*, 163 F.3d at 989; *see also Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996) (a health care provider may be

7

liable where his treatment decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment). To establish deliberate indifference based on a physician's treatment decision, plaintiff must show that the decision was "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet*, 439 F.3d at 396.

Defendants argue that Plaintiff has not established deliberate indifference under these standards. They urge that Plaintiff's hypertension remained within medically manageable levels, and that they were not deliberately indifferent to his need for treatment for that condition. The crux of Plaintiff's response to this argument is that while he was jailed, he did not receive the full complement of medication prescribed received prior to his detention, nor did he receive the same dosage. Specifically, Plaintiff notes that from November 2012 to February 2013, he never received the aspirin and Clonidine he had been prescribed prior to detention, and received only 5 mg of Amlodipine, rather than the 10mg dosage of Norvasc he had received prior to his incarceration.

Amlodipine is the generic name for Norvasc. *See* WebMD, http://www.webmd.com/drugs/2/drug-5942/norvasc-oral/details (last visited December 29, 2014). Amlodipine is a calcium channel blocker that relaxes and widens blood vessels to improve blood flow. *See* Drugs.com, http://www.drugs.com/search.php?searchterm=amlodipine (last visited December 30, 2014). Clonidine, like Amlodipine, is used to treat high blood pressure; it lowers blood pressure by decreasing the level of certain chemicals in the blood, allowing the blood vessels to relax and the heart to beat more slowly. *See* Drugs.com, http://www.drugs.com/search.php?searchterm=clonidine (last visited December 30, 2014). Plaintiff contends that Defendants' failure to provide him with both blood pressure medications, and in the

8

same dosage as he had been prescribed prior to his detention, caused him to experience tension in his chest, shoulders, neck, and head.

But Plaintiff's dissatisfaction with his treatment protocol does not establish deliberate indifference on Defendants' part for two reasons. First, it is not clear that his hypertension constituted a serious medical condition. In *Jackson v. Pollion*, 733 F.3d 786, 788 (7th Cir. 2013), where a prisoner complained that a three-week lapse in his hypertension medication caused him symptoms including headaches and lightheadedness, the evidence showed that his blood pressure was only briefly higher than the top of the normal range, 140/90. *Id.* at 789. The Seventh Circuit noted that this slight elevation over the normal range would not have endangered his long-term health. *Id.* As the court pointed out, the "serious medical condition" at issue was not hypertension itself, but the negligible medical consequences of a three-week deprivation of medication for mild hypertension. *Id.* at 790. "No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury." *Id.* (internal citations omitted).

Here, similarly, though Plaintiff had elevated blood pressure upon intake to the jail and at certain points afterward, there is no evidence that anything Defendants did or did not do put him at risk of serious injury. Plaintiff contends in his response to Defendants' motion for summary judgment that the Defendants caused serious damage to his heart, which put him in grave danger, but there is no evidence in his very substantial medical records that supports this theory. *See Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000) (hemophiliac's deliberate indifference claim failed where he had no evidence that he was injured by Defendants' refusal to provide him with a blood clotting protein on certain occasions).

Second, the record demonstrates that Defendants provided treatment that was reasonably effective; Plaintiff's blood pressure was well controlled with medication. In considering a claim of deliberate indifference, the court examines the totality of the care the inmate received, *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997), and the totality of the care here was at least adequate to treat his hypertension. Medical personnel recognized Plaintiff's hypertension upon his entry to the jail and promptly provided medication, which he received with just minimal interruption. His blood pressure was within normal limits in both March and April of 2013.

Plaintiff provides no evidence that the failure to provide him with the same types and amounts of medication he had been prescribed prior to his detention amounted to deliberate indifference. His contention that he should have received different or additional treatment is insufficient. *See Estate of Cole by Pardue v. Fromm,* 94 F.3d 254, 261 (7th Cir. 1996) ("Mere differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference."). Because no reasonable trier of fact could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs, their motion for summary judgment is granted.

If Plaintiff wishes to appeal this final judgment, he may file a notice of appeal with this court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't. of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998).

**CONCLUSION**

Defendants' motion for summary judgment [41] is granted. The Clerk of Court is directed to enter judgment in favor of Dr. Mennella, Nurse Price, Nurse Jefferson, and Nurse Nancy Chumackal, pursuant to F<small>ED</small>. R. C<small>IV</small>. P. 56. This case is closed.

ENTER:

Dated: December 30, 2014

United States District Judge